IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-HC-2045-D

| | |
|---|---|
| KAREEM ALLEN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| JOEL HERRON, Admin., | ) |
| Scotland Correctional Institution, et al., | ) |
| | ) |
| Respondents. | ) |

On March 22, 2010, Kareem Allen ("Allen" or "petitioner"), a state inmate, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1]. On July 12, 2010, respondents answered the petition [D.E. 7] and filed a motion for summary judgment [D.E. 8]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Allen about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 11]. On July 29, 2010, Allen filed a response in opposition to the motion [D.E. 12]. As explained below, respondents' motion for summary judgment is granted.

I.

The North Carolina Court of Appeals summarized the facts of this case as follows:

> At approximately 2:00 p.m. on 26 July 2006, Kareem Allen (defendant) met Ian Franks (Franks) on the corner of 11th and Meares Streets in Wilmington, North Carolina and went to the back seat of Franks's vehicle. Defendant inquired into the whereabouts of the CDs and DVD he had left in Franks's vehicle the previous day. Franks responded, "they should be in here where you left them [.]" Defendant asked Franks to drop him off on "12th and Wright." Franks complied with defendant's request and defendant exited the vehicle. Franks threw defendant's CDs that were in his vehicle on the ground and drove away.

At approximately 2:30 p.m., defendant walked to a convenience store and called Franks two or three times. Defendant asked Franks to meet him at the store so the two could fight. As defendant waited for Franks to arrive for approximately twenty minutes, he drank two energy drinks and did pushups to "pump himself up for fighting[.]" When Franks arrived at the convenience store, defendant demanded "Where['s] my CD at?" Franks responded that he was not responsible for anything defendant had left in his car, but offered to pay for the missing CD and DVD. Defendant reached into Franks's vehicle to retrieve a $20.00 bill and Franks "started swinging[.]" Defendant pushed Franks back and Franks stabbed him twice in the arm with a knife. Franks exited his vehicle and ran away.

Defendant chased Franks, and grabbed his shirt with his left hand and stabbed Franks in the back. Franks spun around and the two started "tussling." Franks was stabbed three more times. Defendant dropped his knife and ran down the street. Franks ran into the convenience store and collapsed. The store clerk called 911 and performed CPR. Paramedics arrived and could not detect a pulse. Franks was transported to New Hanover Regional Medical Center by ambulance and the Center's trauma team attempted to resuscitate him. Franks died from the injuries inflicted by defendant. An autopsy revealed that Franks had three superficial stab wounds to his chest and back and one fatal stab wound that perforated his heart.

Defendant ran towards 7th Street. He spotted his friend Gerric and got into his vehicle. They saw the vehicle of defendant's mother, and flagged her down. His mother drove him to the New Hanover Regional Medical Center emergency room.

Officer Sean Smith (Officer Smith) of the Wilmington Police Department heard about the incident and the description of the suspect over the radio. Officer Smith and his partner believed defendant fit the description and attempted to find his mother, Latonya Allen (Allen). Officer Smith visited Allen's workplace and left a business card for her with his mobile telephone number. Shortly thereafter, Allen called Officer Smith and told him that they were at the emergency room because defendant had been cut. Officer Smith met Allen at the hospital and she led him to the holding area where defendant was being treated. Officer Smith asked defendant what had happened. Defendant initially responded that he had been in a fight over a DVD and had been stabbed. Other officers arrived at the hospital. Upon defendant's discharge from the hospital, Officer Smith transported him to the police station. Defendant gave a statement to police detailing the altercation.

On 27 November 2006, defendant was indicted for second degree murder. Prior to trial on 23 April 2008, defendant filed two separate motions to suppress his statements made to officers at the hospital and at the police station. Following a two-day suppression hearing before the Honorable Charles H. Henry, these motions were denied. On 9 September 2008, a jury found defendant guilty of second degree murder. The trial court found defendant to be a prior record level IV for felony

2

sentencing purposes and sentenced defendant to an active prison term of 240 to 297 months.

State v. Allen, 684 S.E.2d 526, 528–29 (N.C. Ct. App. 2009). The court, finding no error, affirmed Allen's conviction and sentence. Id. at 535.

On January 19, 2010, Allen filed a pro se habeas corpus petition pursuant to N.C. Gen. Stat. § 17-3 in New Hanover Superior Court, which the court summarily denied on January 29, 2010. Mem. Supp. Mot. Summ. J., Ex. 6. On February 11, 2010, Allen filed a pro se petition for certiorari in the North Carolina Court of Appeals, which the court denied on March 1, 2010. Id., Ex. 9.

On March 22, 2010, Allen filed his section 2254 petition. Allen asserts three claims: (1) the trial court erred in denying Allen's motion to dismiss on grounds of insufficient evidence; (2) the trial court imposed a harsher sentence because Allen did not accept a guilty plea and elected to go to trial; and (3) the trial court erred in denying Allen's motion to suppress his statement to police at the hospital. Pet., Ex. 1 ¶¶ 1, 2, 3.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should

3

Case 5:10-hc-02045-D   Document 14   Filed 02/23/11   Page 3 of 10

determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state-court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." See id. at 407; Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

4

Under the doctrine of procedural default, a federal court generally is precluded from reviewing the merits of any claim that the state court found to be procedurally barred based on independent and adequate state grounds. See, e.g., Dretke v. Haley, 541 U.S. 386, 392 (2004); Daniels v. Lee, 316 F.3d 477, 487 (4th Cir. 2003). The doctrine also applies "when a state court also discusses the claim on its merits, e.g., in conducting a plain error review having found a procedural default." Daniels, 316 F.3d at 487. A state rule is "adequate" if it is firmly established and regularly and consistently applied by the state court. See Johnson v. Mississippi, 486 U.S. 578, 587 (1988); McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000). A state rule is "independent" if it does not depend upon a federal constitutional ruling. See, e.g., Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

However, a federal habeas court may review a procedurally defaulted claim if the petitioner demonstrates cause and prejudice as a result of the alleged violation of federal law, or that the failure to consider the federal claim will result in a fundamental miscarriage of justice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show cause, a petitioner must show that something external to him prevented him from complying with the state procedural rule. Id. at 753. To show prejudice, a petitioner must show he was actually prejudiced as a result of the alleged violation of federal law. See, e.g., United States v. Frady, 456 U.S. 152, 167–69 (1982).

A.

Allen claims that the trial court erred in denying his motion to dismiss on grounds of insufficient evidence to establish the elements of second degree murder. See Pet. ¶ 12 (ground one), Ex. 1 ¶ 1. Allen did not raise this argument on direct appeal. Mem. Supp. Mot. Summ. J. 4; Mem. Opp'n Mot. Summ. J. 4. Thus, respondents contend the claim is procedurally barred. Mem. Supp. Mot. Summ. J. 4.

5

A claim that a criminal defendant fails to raise on direct appellate review is procedurally defaulted. See N.C. Gen. Stat. § 15A-1419. The procedural-default rule of section 15A-1419 is an adequate and independent state ground precluding habeas review. See, e.g., Sharpe 593 F.3d at 377; Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998). Because Allen failed to preserve this issue under North Carolina law, it is procedurally barred. See, e.g., Woodford v. Ngo, 548 U.S. 81, 92 (2006); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).

Allen contends that his appellate counsel was ineffective for failing to raise this claim on direct appeal, and that counsel's failure "is [sufficient] to demonstrate cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default." Mem. Opp'n Mot. Summ. J. 4. The Sixth Amendment right to appellate counsel includes the right to the effective assistance of counsel. See, e.g., Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that counsel's representation was objectively unreasonable and that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. See, e.g., Smith v. Robbins, 528 U.S. 259, 285 (2000). Appellate counsel is not required to assert all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Id. at 288. Reviewing courts must presume that in determining which issues to appeal, appellate counsel selected those issues most likely to afford relief. See, e.g., Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Assuming, without deciding, that Allen is able to establish that his appellate counsel's failure to raise the sufficiency of the evidence argument on appeal was objectively unreasonable, his claim still fails because he has not demonstrated prejudice. The standard of review for a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the

6

Case 5:10-hc-02045-D   Document 14   Filed 02/23/11   Page 6 of 10

prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See, e.g., Wright v. West, 505 U.S. 277, 284 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979).

In this case, Allen is not able to demonstrate that he would have prevailed on appeal because there is sufficient evidence in the record to demonstrate that he committed second-degree murder.

> "The elements of second-degree murder . . . are: (1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation." State v. Fowler, 159 N.C. App. 504, 511, 583 S.E.2d 637, 642, disc. review denied, 357 N.C. 580, 589 S.E.2d 355 (2003); N.C. Gen. Stat. § 14-17 (2007). Our Supreme Court has held that the "'[i]ntent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice.'" State v. Rich, 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000) (quoting State v. Brewer, 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991)). "The intentional use of a deadly weapon which causes death gives rise to an inference that the killing was done with malice and is sufficient to establish murder in the second degree." State v. Brewington, 179 N.C. App. 772, 776, 635 S.E.2d 512, 516 (2006).

State v. Banks, 191 N.C. App. 743, 751–52, 664 S.E.2d 355, 361 (2008).

Here, Allen expressly asked Franks to meet him "so the two could fight." Allen, 684 S.E.2d at 528–29. Allen prepared for the fight by drinking two "energy drinks" and doing pushups to "pump himself up for fighting." Id. When Franks ran away, Allen chased after him, "grabbed his shirt with his left hand and stabbed Franks" at least four times, killing him. Id. This evidence amply demonstrates each element of second-degree murder. See Banks, 191 N.C. App. at 752, 664 S.E.2d at 361. Accordingly, even if Allen's appellate counsel contested the sufficiency of the evidence on direct appeal, the claim would have failed.

B.

Next, Allen claims that the trial court imposed "a harsher sentence because he did not accept a plea and exercised his right to a jury trial." Pet. ¶ 12 (ground two), Ex. 1 ¶ 2. Allen first raised this argument on direct appeal. See Allen, 684 S.E.2d at 534. The North Carolina Court of Appeals

7

rejected this claim, noting that "the trial court did not make any comments pertaining to defendant's rejection of the plea offer . . . and sentenced him within the presumptive range to . . . a lower sentence than was requested by the State." Id. Allen also claims that the trial court erred in denying his motion to suppress statements made to the police at the hospital. Pet. ¶ 12 (ground three), Ex. 1 ¶ 3. Allen raised this claim on direct review, and the North Carolina Court of Appeals explained at length why the trial court properly denied the motion to suppress. Allen, 684 S.E.2d at 529–31.

Respondents contend both claims are procedurally barred because Allen did not file a petition for discretionary review to the North Carolina Supreme Court raising these claims. Mem. Supp. Mot. Summ. J. 9, 21. Allen responds that his appellate counsel was ineffective for failing to file the petition. Mem. Opp'n Mot. Summ. J. 6–7.

A prisoner is required to exhaust the remedies available to him in the state courts before he files a writ of habeas corpus in the federal courts. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement of section 2254 demands that state prisoners give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This "one full opportunity" includes filing petitions for discretionary review with the state supreme court when that review is part of the ordinary appellate procedure in the state. See id. In North Carolina, a petitioner may satisfy the exhaustion requirement of section 2254 by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review, or by filing a motion for appropriate relief and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. § 7A-31; N.C. Gen. Stat. § 15A-1422.

Allen raised these claims on direct appeal to the North Carolina Court of Appeals, but did not file a petition for discretionary review with the North Carolina Supreme Court and thus did not exhaust his claims through the direct review process. O'Sullivan, 526 U.S. at 845. Allen's habeas corpus petition pursuant to N.C. Gen. Stat. § 17-3 also failed to exhaust these claims. In North Carolina, habeas corpus is an extremely limited remedy that only challenges the jurisdiction of the court of conviction and allows no determination of the merits of any other claim. See, e.g., Broughton v. Baker, 537 F. Supp. 274, 279 (E.D.N.C. 1982) vacated as moot sub nom. Broughton v. North Carolina, 717 F.2d 147 (4th Cir. 1983). Therefore, the North Carolina courts have not had "one full opportunity to resolve [these] constitutional issues." O'Sullivan, 526 U.S. at 845. Furthermore, if Allen were to return to state court and attempt to raise these claims again through a motion for appropriate relief, they would be considered procedurally barred pursuant to N.C. Gen. Stat. § 15A-1419. Thus, Allen has procedurally defaulted these claims.

As for Allen's contention that his appellate counsel's failure to file a petition for discretionary review constitutes cause for his failure to exhaust, the contention fails. There is no constitutional right to counsel to seek discretionary review in the North Carolina Supreme Court. See, e.g., Wainwright v. Torna, 455 U.S. 586, 587–88 (1982) (per curiam); Ross v. Moffitt, 417 U.S. 600, 610–12 (1974). Consequently, a claim of ineffective assistance of counsel for failing to file a petition for discretionary review cannot constitute "cause" for procedural default. See, e.g., Coleman, 501 U.S. at 752–53.

Alternatively, Allen has not shown that the North Carolina Court of Appeals' ruling on these issues reached a result contrary to, or involved an unreasonable application of, clearly established federal law. See, e.g., Renico, 130 S. Ct. at 1862; Williams, 529 U.S. at 405; Stroud v. Polk, 466 F.3d 291, 295 (4th Cir. 2006); Allen v. Lee, 366 F.3d 319, 323–24 (4th Cir. 2004) (en banc) (per

9

curiam); Hartman v. Lee, 283 F.3d 190, 198–99 (4th Cir. 2002). Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e); Sharpe, 593 F.3d at 378. Thus, these claims fail.

III.

In sum, the court GRANTS respondents' motion for summary judgment [D.E. 8] and DISMISSES Allen's application for a writ of habeas corpus [D.E. 1]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c). The Clerk of Court shall close this case.

SO ORDERED. This 23 day of February 2011.

JAMES C. DEVER III
United States District Judge